**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GARY J. WINKLER, | 3:13-cv-00711-RCJ-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| C/O GODECKI, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#25). Plaintiff opposed (#27), and defendants replied (#28). The court has reviewed the motion and papers, and hereby recommends that the motion be granted in part.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gary Winkler ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at High Desert State Prison ("HDSP") in Indian Springs, Nevada, but the events precipitating this action occurred during periods of incarceration at Lovelock Correctional Center ("LCC") in Lovelock, Nevada, and Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings several civil rights claims against LCC officials. (#13 at 2–3.)

The District Court screened the complaint on January 22, 2015, and permitted counts I and II to proceed. (#14 at 10.) In count I, plaintiff brings an Eighth Amendment excessive force claim against Henry Godecke, an LCC correctional officer. (*Id.* at 4.) Plaintiff maintains that on or about December 8, 2011, he and Godecke engaged in a verbal altercation. (#13 at 3–4.) Two days later, on December 10, 2011, Godecke allegedly entered plaintiff's cell and repeatedly struck him on his face and body, inflicting "permanent physical disfigurement and debilitating

injuries." (*Id.*)  Count II states an Eighth Amendment claim for deliberate indifference against former LCC Correctional Lieutenant Matthew Wightman ("Wightman") and former LCC Warden Robert LeGrand ("LeGrand").  Plaintiff asserts that Wightman and LeGrand knew Godecke had a problem with alcohol and, presumably, a propensity for violence, but failed to take appropriate steps to eliminate the threat he posed to inmates' safety.  (#13 at 7, 12; #14 at 4–6.)

On October 5, 2015, defendants filed a motion for summary judgment on the basis that plaintiff failed to properly exhaust administrative remedies.  In the alternative, defendants move for summary judgment as to plaintiff's count II claims on the grounds that Wightman and LeGrand lacked the requisite knowledge to sustain plaintiff's claims of deliberate indifference.  (#25 at 10.)  For the reasons discussed below, the court finds that summary judgment should be granted as to defendants Wightman and LeGrand, but denied on the issue of exhaustion.

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the court's role is to verify whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

2

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1

### III.    DISCUSSION

2

**A.    Failure to Exhaust Administrative Remedies**

3

### 1.    Exhaustion under the PLRA

4    Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

5    respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

6    confined in any jail, prison, or other correctional facility until such administrative remedies as are

7    available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Porter v. Nussle*, 534

8    U.S. 516, 524 (2002).  The requirement's underlying premise is to "reduce the quantity and

9    improve the quality of prisoner suits" by affording prison officials the "time and opportunity to

10   address complaints internally before allowing the initiation of a federal case.  In some instances,

11   corrective action taken in response to an inmate's grievance might improve prison administration

12   and satisfy the inmate, thereby obviating the need for litigation."  *Id.* at 524–25.  To meet the

13   exhaustion requirement, the PLRA demands "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81,

14   90 (2006).  Thus, an inmate must comply with "all deadlines and other critical procedural rules"

15   held out by the prison.  *Id.* at 90.

16   In the Ninth Circuit, a motion for summary judgment will typically be the appropriate

17   vehicle to decide whether an inmate has properly exhausted his or her administrative remedies.

18   *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014).  "If undisputed evidence viewed in the light

19   most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary

20   judgment under Rule 56.  If material facts are disputed, summary judgment should be denied, and

21   the district judge rather than a jury should determine the facts."  *Id.* at 1166.  The question of

22   exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim."  *Id.*

23   at 1170.

24   Failure to exhaust is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

25   The defendant bears the burden of proving there was an available administrative remedy left

26   unexhausted by the inmate.  *Albino*, 747 F.3d at 1172.  A remedy is "available" when, as a

27   practical matter, it is capable of use.  *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005).  If the

28   defendant makes such a showing, the burden shifts to the inmate, "who must show there is

something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).  Still, the ultimate burden of proof remains with the defendant.  *Id.*  Where circumstances render administrative remedies "effectively unavailable," an inmate's failure to exhaust is excused.  *Albino*, 697 F.3d at 1030 (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010)).

## 2.    The NDOC's Inmate Grievance System

The procedural rules relevant for proper exhaustion "are defined not by the PLRA, but by the prison grievance process itself."  *Bock*, 549 U.S. at 218.  The grievance process at NDOC institutions is governed by NDOC Administrative Regulation ("AR") 740.[1]

Inmates may not grieve issues outside of the NDOC's control, such as court decisions and parole board decisions, AR 740.03(3), and although they may appeal a rejection of a grievance "deemed inappropriate for review or not within the intended scope of this Regulation," they may do so "only to the next procedural level of review[,]" AR 740.03(5).  Otherwise, the grievance process features three levels and imposes a mandatory burden upon NDOC staff to respond with some particularity: "Comprehensive responses are required for inmate grievances.  Statements such as 'Your grievance is denied.' are not acceptable.  An explanation is necessary."  AR 740.03(10).

The NDOC grievance process begins at the informal level.  If the inmate is unable to resolve the issue through discussion with an institutional caseworker, *see* AR 740.04, the inmate is to file an informal grievance "[w]ithin six (6) months if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims[,]" AR 740.05(4).  The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels."  AR 740.05(8).  All grievances must "include the remedy sought by the inmate to resolve the claim[,]"

---

[1] Defendants submitted with their motion an authenticated copy of AR 740 (#25-6), and the parties do not dispute the authenticity of the exhibit.

and a failure to do so "will be considered an improper grievance . . . ." AR 740.05(6).  NDOC staff are required to respond within forty-five days, AR 740.05(12), and "[t]he response to the grievance should be substantial, referencing all policies, procedures, rationale, and/or circumstances in finding for or against the inmate[,]" AR 740.05(3).  An inmate who is dissatisfied with the informal response may appeal to the formal level within five days.  AR 740.05(12).

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." AR 740.06(2).  The grievance is reviewed by officials of a higher level, *see* AR 740.06(1), who have forty-five days to respond, AR 740.06(4).  Within five days of a dissatisfactory first-level response, the inmate may appeal to the second level.  *Id.*  Second-level grievances are subject to still-higher review.  *See* AR 740.07(1).  Officials are to respond within sixty days, specifying the decision and the reasons the decision was reached.  AR 740.07(3)–(4). One an inmate receives the response, he or she is considered to have exhausted available administrative remedies, and may pursue civil rights litigation in federal court.

Each NDOC institution must maintain locked boxes that inmates can directly access in order to submit grievances.  AR 740.01(1).  The institution's Grievance Coordinator is to record receipts, transmittals, actions, and responses to all grievances, and stamp each page of a grievance with the date it is entered into the Nevada Offender Tracking Information System ("NOTIS"), NDOC's system for electronically storing inmate grievances.  AR 740.01(5).  Separate grievance files are to be maintained for each inmate.  AR 740.02(1).  The grievance file should include all forms and relevant attachments for each level of the grievance process, AR 740.02(4), and must be kept for a minimum of five years after a final disposition of a grievance is issued, AR 740.02(2).

### 3.    Grievance Log No. 2006-29-54387

Plaintiff's claims arise from an alleged assault that occurred at LCC on December 10, 2011.  On December 12, 2012, while incarcerated at NNCC, plaintiff submitted his first informal

level grievance on the matter.[2]  (#25-2.)  Therein plaintiff described the assault, his injuries, his subsequent medical treatment, and a February 2012 discussion between plaintiff and Wightman about Godecke.  (*Id.*)  Plaintiff's informal grievance was assigned log number 2006-29-54387, and was signed and dated on December 24, 2012 by Monica Navarro ("Navarro"), Assistant to the Grievance Coordinator.[3]  (*Id.*; #25-8 at 1.)  Warden Isidro Baca ("Baca") drafted a response on December 31, 2012, stating: "In accordance with AR 740 your grievance has been referred to the Inspector General's Office for review.  All investigations are confidential, as such you may not be provided with the outcome." (#25-3.)  It is clear from plaintiff's first-level grievance that he received Baca's response, but the grievance copy and NOTIS record do not indicate when that occurred.

Plaintiff filed a first-level grievance on February 14, 2013, asking to be provided with the outcome of the Inspector General's investigation.  (#25-4.)  The grievance was received, signed by Navarro, and stamped on March 12, 2013.  (*Id.*)  Baca drafted a response on March 29, 2013: "The IG's office will review said grievance and inmate complaints, all review and/or investigations are confidential and not subject to disclosure to inmates." (#25-5.)  Once again, it is not clear when plaintiff received the response.

Plaintiff claims that he exhausted his administrative remedies by submitting a second-level grievance on April 26, 2013.[4]  (#27 at 4.)  The grievance is written on an informal grievance form, which plaintiff corrected to identify it as a "second grievance;" plaintiff also wrote on the form, "P.S. They were out of 2nd Level document forms, so you may construe this as my final

---

[2] In a footnote, defendants note that plaintiff's grievance was untimely pursuant to AR 740.05(4), and therefore subject to administrative default.  (#25 at 3 n.3.)  Defendants do not move for summary judgment on that basis, however, perhaps recognizing the inefficacy of such an argument.  *See Jones v. Stewart*, 457 F. Supp. 2d 1131, 1136 (D. Nev. 2006) (holding that an inmate who filed an untimely grievance which was nevertheless addressed by prison officials on its merits had properly exhausted administrative remedies).
[3] Defendants submitted authenticated copies of grievances and responses within log number 2006-29-54387, and plaintiff does not contest their authenticity.
[4] The parties submitted identical copies of the second-level grievance to the court.  (#25-7; #27 at 33–34.)  Although unauthenticated, neither party contests the copies' authenticity; their disagreement concerns whether plaintiff ever submitted the grievance to NNCC officials.

1    level grievance doc. form." (#25-7; #27 at 33–34.)  Although signed and dated by plaintiff, the

2    grievance was not signed, dated, or stamped by an NNCC official. (*Id.*)

3        **4.    Analysis**

4        There is no question that plaintiff's second-level grievance in log number 2006-29-54387

5    was never addressed on the merits, and thus, that plaintiff did not fully exhaust his administrative

6    remedies.  If administrative remedies were made effectively unavailable, however, plaintiff's

7    failure to exhaust does not bar his claim from proceeding.  *See McBride v. Lopez*, 807 F.3d 982,

8    986 (9th Cir. 2015).

9        The Ninth Circuit has recognized that certain affirmative actions by prison officials, even

10   if done innocently, render administrative remedies unavailable.  *Albino*, 697 F.3d at 1034.  For

11   example, exhaustion has been excused where jail officials fail to inform an inmate of the proper

12   grievance filing process, *id.* at 1177; where improper screening of grievances thwarts an inmate's

13   attempt to exhaust, *Sapp*, 623 F.3d at 828; where an inmate is misled into thinking he needs a

14   particular, unobtainable document to pursue his grievance, *Nunez v. Duncan*, 591 F.3d 1217,

15   1224–26 (9th Cir. 2010); or where an inmate lacks access to the necessary grievance forms,

16   *Marella v. Terhune*, 568 F.3d 1024, 1027–28 (9th Cir. 2009).  On facts more closely aligned with

17   the present case, the Seventh Circuit excused exhaustion in *Dole v. Chandler*, 438 F.3d 804, 805

18   (7th Cir. 2006), where an inmate had attempted to send a grievance to the Administrative Review

19   Board, as required by Illinois's regulations.  Although the inmate handed the grievance to a prison

20   official in a properly-addressed envelope, the grievance never made it to the Board.  *Id.*  Under

21   the circumstances, the court found that barring the inmate's claim for a failure to exhaust would

22   allow the prison officials to "employ their own mistake to shield them from possible liability . . .

23   ." *Id.* at 811.

24       There is a notable difference between *Dole* and the instant matter: there, the prison

25   officials "acknowledged the initial deposit of the [grievance], and the possibility of fraud in filing

26   [did] not exist." *Id.*  In contrast, defendants argue that plaintiff never submitted his second-level

27   grievance to one of the grievance lockboxes.  (#25 at 5.)  In support of their argument, defendants

28   submit  sworn  declarations  by  Navarro  and  NNCC  Associate  Warden  Ron  Schreckengost

8

1  ("Schreckengost").   Navarro described the grievance collection process as follows. Each

2  weekday, caseworkers collected the grievances from the lockboxes and brought them to her

3  office.  (#25-8 at 2.)  Navarro would sign, date, and time-stamp each grievance.  (*Id.*)  She or her

4  assistants would then sort the grievances into piles and type them into NOTIS.  (*Id.*)  Navarro

5  stated that she was unaware of her office "ever having lost a grievance or having not entered into

6  NOTIS a grievance an inmate submitted."   (*Id.* at 3.)   Upon review of plaintiff's NOTIS

7  grievance history and paper grievance copies, Navarro found no submission of a second-level

8  grievance in log number 2006-29-54387.  (*Id.*)  Schreckengost also reviewed plaintiff's grievance

9  file, and similarly concluded that plaintiff "submitted one incomplete grievance through two of

10  the three levels of administrative review" in relation to the alleged altercation with defendant

11  Godecke.  (#25-1 at 1–2.)

12      Plaintiff, on the other hand, maintains that he submitted the second-level grievance.[5]  (#27

13  at 4.)  He speculates that perhaps the NNCC employees were confused and mistook it for an

14  informal grievance.  (*Id.* at 2, 4.)  As to that possibility, the court does not see how the grievance

15  could have been so misinterpreted—or if it was, why it would have gone undocumented.

16  Nevertheless, plaintiff raises a genuine dispute as to whether the second-level grievance was filed.

17  Defendants' declarations describe a careful process generally followed in the collection and

18  tracking of inmate grievances, but do not foreclose a reasonable factfinder from concluding that

19  on this particular occasion the grievance was mishandled, lost, or even thrown into the trash.  The

20  court suspects that, were such an event to occur, the majority of inmates would be left with scant

21  more proof than plaintiff has thus-far presented: an unsigned copy of the grievance.  Because

22  defendants have not carried their burden of proof in light of plaintiff's factual allegations,

23  summary judgment on the question of exhaustion is not warranted.  *See Williams*, 775 F.3d at

24  1192.

25  **B.      Defendants Wightman and LeGrand**

26          **1.      Civil Rights Claims Under § 1983**

27  —————————————

28  [5] The court treats plaintiff's opposition as an affidavit because it was made under the penalty of
perjury.  *Williams*, 775 F.3d at 1192 n.11.

9

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Anderson*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### 2.    Deliberate Indifference Claims

The Eight Amendment places a duty on prison officials to take reasonable steps to protect inmates from physical abuse. *Hoptowit v. Ray,* 682 F.2d 1237, 1250 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Farmer v. Brennan,* 511 U.S. 825, 833 (1994). To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." *Farmer,* 511 U.S. at 834. The official must have been subjectively aware of the risk, and have done nothing to prevent the resulting harm. *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001). Thus, "there is both an objective and subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

To meet the objective standard, the deprivation alleged must be "'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The subjective standard requires, in turn, "more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Id.* at 836. Mere negligence will not suffice. To prove knowledge of a risk to inmate safety, however, the prisoner may rely on circumstantial evidence; in fact, the very

1   obviousness of the risk may be sufficient to establish knowledge. *See id.* at 842; *Wallis v.*
2   *Baldwin,* 70 F.3d 1074, 1077 (9th Cir.1995).

3       **3.    Analysis**

4       As screened by this court, count II asserts that Wightman and LeGrand acted with
5   deliberate indifference by failing to separate Godecke from the inmates despite their knowledge
6   that Godecke had a problem with alcohol.  (#14 at 6.)  The screening order recognized that
7   "plaintiff does not explicitly allege [in his complaint] that defendants Whiteman [*sic*] and
8   LeGrand knew of previously violent behavior by officer Godecki [*sic*]."

9       Defendants maintain that neither Wightman nor LeGrand had prior knowledge of
10  Godecke's purported alcoholism or propensity for violence, and, therefore, that plaintiff's claims
11  lack merit.  (#25 at 11.)  Three sworn declarations accompanying defendants' motion for
12  summary judgment support their argument.  To begin, Godecke undermines the allegation that his
13  alcohol consumption posed a threat of any sort to plaintiff's safety, stating "I have *not* consumed
14  a single alcoholic beverage since 1987."  (#25-9 (emphasis in original).)  Plaintiff's ability to
15  meet the subjective requirement of a deliberate indifference claim is thwarted by Whiteman and
16  LeGrand, each of whom state:  "In December of 2011, I had no knowledge of Defendant
17  Godecke's alleged alcoholism.  Nor, in December of 2011, did I have any cause to believe that
18  Defendant Godecke had an alleged passion for violence." (#25-10; #25-11.)

19      Plaintiff has produced no evidence to support the assertions made in count II of his
20  complaint, and his opposition wholly fails to address defendants' declarations.  (*See* #13 at 7.)
21  Instead, plaintiff focuses on Wightman and LeGrand's purported failure to follow the prison's
22  administrative segregation regulations—assertions not relevant to the claims currently before this
23  court.  (*See* #27 at 4–7.)  In doing so, plaintiff fails to show there is a genuine issue for trial.  Fed.
24  R. Civ. P. 56(e).  The court, accordingly, finds that defendants' motion for summary judgment
25  should be granted as to the deliberate indifference claims against Wightman and LeGrand.

26                      **IV.    CONCLUSION**

27      Based on the foregoing, the court concludes that defendants are entitled to partial
28  summary judgment.  With respect to exhaustion, there is a genuine dispute as to whether

plaintiff's administrative remedies were rendered "effectively unavailable," thus excusing the exhaustion requirement. However, defendants have carried their burden of showing that plaintiff cannot succeed on his deliberate indifference claims against defendants Wightman and LeGrand, and are entitled to summary judgment on count II.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#25) be **DENIED** as to count I and **GRANTED** as to count II.

**DATED**: February 17, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**